UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Deborah M. Trohoske, *et al.*, | ) | CASE NO. 1: 11 CV 877 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| vs. | ) | |
| | ) | |
| Chicago Title Insurance Company, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

This putative class action concerns defendants' sale to plaintiffs of "homeowner's" title insurance at the closing of plaintiffs' residential real estate purchases. Pending before the Court is Defendants' Motion for Judgment on the Pleadings Based on the Second Amended Complaint. (Doc. 24.) For the reasons stated below, the motion is granted.

**Facts**

The following facts are alleged in the Second Amended Complaint (the "Complaint" or "SAC"). Defendant Chicago Title Insurance Company ("Chicago Title") is a title insurance company. Defendant Great Northern Title Agency, LLC ("Great Northern") is a title insurance agency. Plaintiffs Deborah M. Trohoske and Justin Jeffers are residential home buyers who purchased homes in Cuyahoga County, Ohio using standard form real

1

estate purchase agreements approved by the Cleveland Area Board of Realtors.

Trohoske signed a form real estate purchase agreement to purchase a home in Parma Heights, Ohio on June 12, 2006.  (SAC, Ex. 1.)  Section J of Trohoske's purchase agreement (in the paragraph captioned "Title") provides:  "Buyer [Trohoske] shall receive an Owners Policy of Title Insurance ('Title Policy') through Barrister's of Ohio, LLC in the amount of the purchase price subject to the exceptions above and any acts of Grantee."  "Barrister's of Ohio, LLC" is crossed out by hand and revised to state:  "Chicago Title to handle title and escrow."  Section K of the agreement (in the paragraph captioned "Charges") provides that the seller and the buyer each shall pay "one-half the premium for the Title Policy."  In section Q, the agreement provides:  "This AGREEMENT shall be made part of or be used as the escrow instructions and shall be subject to the Escrow Agent's standard conditions of escrow not inconsistent herewith."

Although there was no separate written contract regarding the provision of title, escrow, and settlement services, "Trohoske and the seller entered into a contract with Chicago Title to handle title and escrow" and to serve as settlement agent in connection with Trohoske's real estate transaction.  Trohoske also entered into a contract with Chicago Title for the provision of title insurance.  (SAC, ¶ 20.)

Jeffers signed a form real estate purchase agreement in connection with the purchase of his home in Lakewood, Ohio on January 27, 2007.  (SAC, Ex. 2.)  In the paragraph of the agreement captioned "Title," Jeffers's purchase agreement provides:  "An Owner's Fee Policy of Title Insurance in the amount of the purchase price shall be provided to PURCHASER with the premium cost shared equally between PURCHASER and SELLER."

In the paragraph captioned "charges and closing costs," Jeffers's agreement provides that the seller and the buyer shall each pay "one-half (½) premium for the Owner's Policy of Title Insurance." Jeffers's agreement provides that Great Northern would perform title and "Chicago" would perform escrow services.

Jeffers and his seller also entered into an unwritten contract with Chicago Title whereby Chicago Title agreed to perform escrow services and serve as settlement agent in connection with the closing of Jeffers's real estate transaction. In addition, Jeffers entered into a contract with Chicago Title for the provision of title insurance. (SAC, ¶ 24.)

Plaintiffs allege that defendants wrongfully "upsold" them (and a class of similarly situated buyers who used similar form real estate purchase agreements in connection with residential real estate purchases) "homeowner's" title insurance rather than "owner's" title insurance at the closings of their real estate transactions.

Plaintiffs acknowledge in the Complaint that they each received and signed forms at their closings that "compared certain attributes of the OWNER'S Policy of Title Insurance with the HOMEOWNER'S policy." (SAC, ¶ 31) (the "comparison statements").[1] Trohoske and Jeffers both indicated by check mark on their respective comparison statements that they "chose" to purchase homeowner's title insurance. The comparison statements are entitled "Why the ALTA '98 Homeowner's Policy of Title Insurance??" and on their face set out the differences in the coverages of an "ALTA 1998 Homeowner's Policy" and an "ALTA 1992 Owner's Policy." The comparison statements expressly state above plaintiffs' signatures:

---

[1] Plaintiffs do not attach copies of these comparison statements to the Complaint, but the statements are attached as exhibits to defendants' answers. (*See* Doc. Nos. 22. and 23, Exs. A and B.)

"The coverage provided by both the ALTA 2006 Owner's Policy and the ALTA Homeowner's Policy have been explained to the undersigned." Plaintiffs also acknowledge in the Complaint that they each received a HUD-1 "Settlement Statement" at their closings disclosing the "various applicable charges" associated with their real estate transactions, including the costs of title insurance. (SAC, ¶27.) Line 1108 of Trohoske's HUD-1 Settlement Statement discloses Trohoske's cost for "Title insurance to Chicago Title Insurance Company" as $503.65 with the cost of "Homeowners Title Policy 93.15." (SAC, Ex. 3.) Line 1108 of Jeffers's HUD-1 Settlement Statement discloses Jeffers's cost for "Title insurance to Great Northern Title Agency" as $748.38 with the cost of "Homeowners Title Policy 149.63." (SAC, Ex. 4.)

Plaintiffs allege the comparison statements and HUD-1 Settlement Statements did not adequately disclose to them all material facts as to the homeowner's title insurance defendants sold them. Specifically, plaintiffs allege the documents did not reveal to them: (1) that the homeowner's title insurance "was a full 15 percent more expensive than an OWNER'S policy"; (2) that their real estate purchase agreements "obligated Chicago Title only to provide an OWNER'S policy"; (3) that "the buyer would bear the full incremental cost of a HOMEOWNER'S policy, notwithstanding the seller's obligation to split the cost of title insurance" in the purchase agreements; and (4) the "additional benefit that the Defendants would receive as an incentive to upsell from an OWNER'S policy to a HOMEOWNER's policy." (SAC, ¶ 31.)

The SAC alleges three causes of action against defendants:  breach of contract (Count One); unjust enrichment (Count Two); and fraud (Count Three).  Defendants move for

4

judgment on the pleadings on all claims.

**Standard of Review**

The standard of review for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as the standard applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 761 (6th Cir. 2006). In order to survive dismissal, the complaint's factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Ass'n of Cleveland Firefighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). That is, the complaint must contain sufficient factual material to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Further, in determining a motion for judgment on the pleadings (as with a motion to dismiss), the court must view all factual allegations in the plaintiff's favor. *See Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008). A court may consider: (1) pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Dobrski v. Ford*

*Motor Co.*, 698 F. Supp.2d 966, 974 (N.D. Ohio 2010).  In that the comparison statements and HUD-1 Settlement Statements are referred to in the Complaint and are central to plaintiffs' allegations, the Court may consider these documents in determining defendants' motion for judgment on the pleadings.

**Discussion**

*Breach of Contract*

Plaintiffs allege that because there were no separate, written contracts pertaining to the provision of escrow and settlement services, plaintiffs' real estate purchase agreements themselves set forth the contractual duties owed by defendants under Ohio law in conducting escrow and title services and serving as settlement agent. (SAC, ¶¶ 20, 24.)

Plaintiffs allege that, under their real estate purchase agreements, "Chicago Title's contractual obligation was to 'close' . . . a contract that expressly called for [plaintiffs] to obtain an OWNER'S title insurance policy, with the cost split between [each plaintiff] and the seller."  (SAC, ¶¶ 21, 25.)  Plaintiffs allege defendants materially breached this contractual obligation by "upselling [plaintiffs] the Homeowner's Policy of Title Insurance at a cost inflated by 30 percent."  (SAC, ¶¶ 41-44.)  According to plaintiffs, defendants' conduct in "upselling" them homeowner's insurance  "was expressly contrary to the terms of the contract[s] placed into escrow by the Plaintiffs and their sellers, which specified [only] an OWNER'S policy of title insurance with the cost to be split equally between buyer and seller."  (SAC, ¶ 44.)

Defendants contend they are entitled to judgment on the pleadings on plaintiffs'

6

breach of contract claim.[2] First, defendants contend there is no viable contract claim against Great Northern as the "SAC contains no allegation that Great Northern acted as the escrow agent for either of Plaintiffs' real estate purchase transactions." (Def. Br. at 15.)

Second, although defendants do not dispute that plaintiffs' purchase agreements establish the scope of Chicago Title's contractual duties to plaintiffs as their escrow and settlement agent under Ohio law, defendants contend Chicago Title did not breach any duty required of it under the purchase agreements. Defendants contend the escrow instructions in the purchase agreements do not require (as plaintiffs allege) "that Plaintiffs be sold *only* the basic Owner's Policy." (Def. Br. at 20). Rather, defendants contend they complied with all escrow instructions, and plaintiffs received the title insurance required to be supplied in the purchase agreements, because plaintiffs "received all of the insurance coverage provided by an Owner's Policy." Plaintiffs simply elected to purchase more insurance than the base level called for in the purchase agreements. (Def. Br. at 19.) Defendants contend that no escrow instruction contained in the purchase agreements prevented them from offering plaintiffs the opportunity to purchase "additional insurance."

Chicago Title also contends that it did not violate any escrow instruction by "allocating the full additional cost associated with the Homeowner's Policy to Plaintiffs." Defendants explain that "the Escrow Instructions only required that those portions of

---

[2] Defendants note that this breach of contract claim has been "extensively reworked" from plaintiffs' originally contract claim, which alleged that defendants breached the purchase agreements themselves. After defendants pointed out that they were not parties to the purchase agreements in a prior motion for judgment on the pleadings, plaintiffs recast their claim as pertaining to "express" contracts with Chicago Title to handle escrow and settlement services in connection with plaintiffs' real estate transactions.

7

Plaintiffs' insurance premiums *attributable to the Owner's Policies* be split evenly with the sellers"; the purchase agreements do not require the cost of any additional insurance purchased by plaintiffs to be split.  (Def. Br. at 20.)  To support this point, defendants rely on "Standard Conditions of Acceptance of Escrow" agreements entered into by plaintiffs and Chicago Title.  (Doc. 22, Chicago Title Ans., Exs. C, D.)  The Standard Conditions state that escrow instructions were deposited with Chicago Title in the form of  purchase agreements.  The Standard Conditions set forth various additional conditions and stipulations incorporated into the escrow agreements.[3]

> At paragraphs 8 and 9, the Standard Conditions provide:
>
> 8.  Unless otherwise specified in the instructions, seller shall be chargeable with cost of the following items; examination of title and title evidence, transfer tax, one-half escrow fee, all taxes, and assessments due and payable to the County Treasurer at the date of filing the instruments for record in the within escrow, and costs of satisfying the record liens or encumbrances not specifically assumed by the buyer according to instructions.  Unless otherwise specified in the instructions, buyer shall be chargeable with cost of the following items; one-half escrow fee, cost of recording deed, and buyer's mortgage or mortgages, and any lien item of additional expense required by the buyer or his mortgagee not provided for herein.  The cost of any extraordinary services or expenses shall be borne by the party benefitted thereby.
>
> 9.  The Company [Chicago Title] is not responsible for proration of insurance premiums or for the transfer of insurance policies unless specifically required by the instructions.

Defendants argue that the statement in paragraph 9 that Chicago Title "is not responsible for proration of insurance premiums or for the transfer of insurance policies unless specifically required by the instructions," and the statement in paragraph 8 that the cost

---

[3] The "Standard Conditions" agreements are attached as exhibits to Chicago Title's Answer.  (Doc. 22, Chicago Title Ans., Exs. C, D.)

8

of "any extraordinary services or expenses shall be borne by the party benefitted thereby," demonstrate that Chicago Title did not breach any instruction in charging plaintiffs the full incremental cost for homeowner's insurance.  They contend the increased coverage afforded in a homeowner's title policy inures solely to the benefit of the purchaser; therefore, under paragraph 8, plaintiffs were required to bear the full increased incremental cost of a homeowner's policy.[4]

Plaintiffs argue that they have alleged sufficient facts to state a plausible claim for breach of contract.  Plaintiffs' position is that the purchase agreements require Chicago Title to supply only "Owner's" title insurance the cost of which is to be split equally between the buyer and seller.  (Pltf. Opp. at 4.)  According to plaintiffs, defendants were contractually prohibited by the terms of the purchase agreements from "upselling" plaintiffs homeowner's title insurance policies and title insurance where the cost was not split equally between the buyer and the seller.

Plaintiffs also dispute defendants' interpretation of the "Standard Conditions" agreements.  Plaintiffs do not dispute that the Standards Conditions are incorporated into the terms of their real estate agreements but contend that because the Standard Conditions are silent as to the cost of title insurance, the purchase agreements themselves govern the issue of title insurance.  Plaintiffs repeat their position that the purchase agreements require Chicago Title to close transactions where plaintiffs obtained only owner's title insurance where the

---

[4] Defendants also argue the escrow instructions did not prohibit the parties from amending their purchase agreements, and they contend the comparison statements plaintiffs received and signed at closing (indicating that plaintiffs elected to purchase homeowner's title insurance) constitute valid, written, and "legally-binding Homeowner's Policy Amendments." (Def. Br. at 22-23.)

cost was split equally between the plaintiffs and their respective sellers.[5]

Under Ohio law, "[e]scrow is a matter of contract, and if an escrow agent neglects to carry out the instructions of a party to the escrow agreement, liability will result for the damages induced thereby." *Spalla v. Fransen*, 936 N.E.2d 556, 564 (Ohio App. 2010). *See also Gomez v. Huntington Trust Co.*, 129 F. Supp.2d 1116, 1122 (N.D. Ohio 2000) ("Ohio courts look to the terms of an escrow agreement to determine if the escrow agent fulfilled its duties under the contract.") Where there is no written escrow agreement, Ohio courts "look only to the purchase agreement for the duties owed" by an escrow agent. *Spalla*, 936 N.E.2d at 564-65.

The Court agrees with defendants that plaintiffs have not alleged a plausible breach of contract claim even if the factual allegations are viewed in plaintiffs' favor. First, plaintiffs do not have a plausible breach of contract claim against Great Northern. As defendants point out (and plaintiffs do not dispute), there is no allegation that plaintiffs had any contractual escrow agreement with Great Northern.

As discussed above, plaintiff's breach of contract theory against Chicago Title is that Chicago Title had contractual obligations as escrow agent to "close" the transactions presented to it for closing in plaintiffs' real estate purchase agreements, and the purchase agreements required transactions where plaintiffs obtained only owner's title insurance and only insurance where the cost was split equally between plaintiffs and their respective sellers.

---

[5] Plaintiffs also argue that whether a homeowner's policy constitutes an "extraordinary service or expense" is not a determination that may be made on a motion for judgment on the pleadings, and they dispute that the comparison statements constitute valid "amendments" to the purchase agreements.

The Court, however, does not find that the plaintiffs real estate purchase agreements are reasonably so construed.  As defendants point out, the purchase agreements provide that plaintiffs "shall receive" and "shall be provided" owner's policies of title insurance for which the buyer and seller "shall" each pay one-half of the cost.[6]  Defendants' argument is persuasive that nothing in the purchase agreements prohibits the buyers thereunder from purchasing *more* title insurance coverage than is afforded by an owner's policy at plaintiffs' own expense,[7] and nothing in the agreements precludes defendants from offering buyers the option of purchasing such additional insurance.

The Court likewise does not find the purchase agreements reasonably construed to require sellers to pay for half of the cost of title insurance other than owner's title insurance. The purchase agreements on their face only require the sellers to pay one-half of the cost of *owners* title insurance policies.

In sum, plaintiffs' real estate purchase agreements are not reasonably construed as plaintiffs allege to require Chicago Title to provide only an owner's policy of title insurance and only a policy of title insurance the cost of which is split equally between the buyers and the sellers.  Thus, plaintiffs have not alleged a plausible claim that Chicago Title breached a contractual obligation established in the purchase agreements.

---

[6] As defendants point out, plaintiffs do not allege or suggest here that they did not receive the level of coverage provided in an owner's policy at a cost that was split equally between them and their respective sellers.

[7] If this were the case, then all buyers who elect to upgrade their title insurance coverage on their own and to purchase additional coverage at their own expense would be in breach the terms of similar standard form purchase agreements.

For the reasons stated above, plaintiffs' Complaint does not allege a plausible breach of contract claim against any defendant. Defendants' motion for judgment on the pleadings is granted as to Count One.

*Fraud*

Plaintiffs contend their fraud claim in Count Three is a claim for "fraudulent concealment."

In order to establish a claim for fraud under Ohio law, a plaintiff must show: (1) a representation or, where there is a duty to disclose, concealment; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Resource Title Agency, Inc. v. Mooreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 773 (N.D. Ohio 2004).

Plaintiffs allege that Chicago Title and Great Northern owed a duty of disclosure to them and "intentionally defrauded them by failing to disclose that they were selling them a HOMEOWNER'S Policy of Title Insurance at a premium inflated by 30 percent over the premium charged for an OWNER'S Policy of Title Insurance, when the Real Estate Purchase Agreement Form required only the sale of an OWNER'S policy." (SAC, ¶ 51.)

Plaintiffs allege defendants "perpetrated this fraud through the [HUD-1] Settlement Statements and [comparison] form statements, which failed to disclose [to plaintiffs] that: (a) Chicago Title and Great Northern Title were only supposed to sell class members an

12

OWNER'S Policy of Title Insurance, (b) a HOMEOWNER'S policy cost 15 percent more than an OWNER'S policy, and (c) buyers would bear the full incremental costs of a HOMEOWNER'S policy, despite sellers' obligation to split the cost of title insurance, resulting in a 30-percent increase in the total amount [plaintiffs] have to expend on title insurance."  (SAC, ¶ 52.)  Plaintiffs allege that by "withholding such material information, and simply showing [plaintiffs] a long list of additional coverages included on the HOMEOWNER'S policy, Defendants virtually assured that Plaintiffs would rely on the omissions and purchase the more expensive, HOMEOWNER'S policy (thereby earning greater commissions and premiums for themselves), and Plaintiffs did so rely."  (SAC, ¶ 53.)[8]

Defendants contend plaintiffs' fraudulent concealment claim fails under Fed. R. Civ. P. 12(c) because the comparison statements and the HUD-1 Settlement Statements disclosed to plaintiffs everything that was material about homeowner's insurance.  Specifically, the comparison statements fully disclosed to plaintiffs the differences in the coverages between an owner's policy and a homeowner's policy, and the HUD-1 Settlement Statements disclosed to plaintiffs all material and federally-mandated information as to cost.  Specifically, the HUD-1 Settlements Statement disclosed:  (1) the total expense for title insurance (line 1110 of the HUD-1 Settlement Statements); (2) the amount of the insurance expense which was attributable to the homeowner's policy (line 1108); and (3) the exact amount plaintiffs would be required to pay for title insurance (line 1108).  (Def. Rep. at 5.)

Defendants contend they had no duty to disclose to plaintiffs their own compensation

---

[8]

Plaintiffs contend defendants' fraudulent intent is shown by the fact that defendants "routinely prepared the HUD-1 statements showing the increased coverage" before closing.

13

or profits, the sellers' costs, or that they were only supposed to sell an owner's policy under the terms of plaintiffs' real estate purchase agreements.

In their opposition brief, plaintiffs dispute that the comparison statements and HUD-1 Settlement Statements provided all "meaningful disclosure." (Pltf. Opp. at 17.)  Plaintiffs assert that "[i]n Ohio, a duty to disclose arises in a business transaction where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." (*Id*. at 18-19.)  Plaintiffs contend that the information provided in the comparison statements and HUD-1 Settlement Statements was "incomplete" and misleading because defendants did not also disclose the following information to plaintiffs:  (1) the relative price of the two insurance products in either dollar or percentage terms; (2) the total price of either the owner's policy or the homeowner's policy; (3) the fact that if the homeowner's policy is elected, the purchaser will bear the entire additional cost; (4) that electing the homeowner's policy is a departure from what the purchase agreements called for; (5) the additional compensation defendants would earn from selling the more costly insurance product; and (6) that "the person presenting the comparison is acting in a capacity other than as a neutral, third-party closing agent, whose only duty is to strictly comply with the terms of the [purchase agreements]." (Pltf. Opp. at 16-17.)

The Court agrees with defendants that plaintiffs have not alleged a plausible claim of fraudulent concealment.  First, the Court agrees with defendants that the comparison statements and HUD-1 Settlement Statements disclosed to plaintiffs everything that was material about the sale to plaintiffs of homeowner's title insurance.  Specifically, the precise differences between the two types of title insurance policies was fully disclosed to plaintiffs

14

in the comparison statements, and the cost to plaintiffs to purchase homeowner's title insurance was fully disclosed on line 1108 of the federally-mandated HUD-1 Settlement Statements.  Plaintiffs contend defendants had a duty to make fuller disclosures and explanations to them to "dispel misleading impressions" created by the disclosures made in the closing documents.  The Court does not agree.  The information disclosed in the closing documents is accurate.  It does not create "misleading impressions" because plaintiffs did not understand the meaning or import of their real estate purchase agreements in connection with title insurance.  Furthermore, defendants are not alleged to be plaintiffs' fiduciaries here and had no duty to explain to plaintiffs the meaning of plaintiffs' underlying real estate purchase agreements.  Thus, defendants had no duty to explain to plaintiffs that if the homeowner's policy is elected, the purchaser will bear the entire additional cost; that electing the homeowner's policy is a departure from what the purchase agreements called for; the additional compensation defendants would earn from selling the more costly insurance product; and that "the person presenting the comparison is acting in a capacity other than as a neutral, third-party closing agent, whose only duty is to strictly comply with the terms of the [purchase agreements]."[9]

---

[9] Plaintiffs also complain that defendants did not expressly disclose to them the relative price of the two insurance products in either dollar or percentage terms or the total price of either the owner's policy or the homeowner's policy.  However, the Court does not find these alleged "omissions" to be material.  First, the Court agrees with defendants that defendants accurately disclosed to plaintiffs all categories of information that were material to their sale of homeowner's title insurance – namely, the scope and extent of the coverage of a homeowner's policy and the amount of money the plaintiffs must pay for such coverage. Furthermore, defendants did not fraudulently conceal any information as to the two types of insurance policies.  As defendants demonstrate in their reply brief, the information plaintiffs allege to have been concealed from them as to the two types of coverages may be derived from the accurate cost information defendants disclosed on the HUD-1 Settlement Statements.

In sum, the Court finds that the comparison statements and HUD-1 Settlement Statements on their face accurately disclosed to plaintiffs all material information regarding title insurance. Plaintiffs's allegations that defendants failed to disclose to them additional information as alleged in the SAC are insufficient to state a plausible claim for fraudulent concealment.

Even assuming that plaintiffs have alleged plausible fraud claims on the merits, plaintiffs' fraud claims are nevertheless also barred by the four year statute of limitations set forth in Ohio Rev. Code § 2305.09(C). A cause of action for fraud must be brought in Ohio within four years after the alleged misrepresentation was or should have been discovered by the plaintiff. *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989).

Trohoske's home purchase closed on July 7, 2006, and Jeffers's home purchase closed on February 28, 2007. Trohoske did not file this lawsuit until April 4, 2011, more than four years after both of plaintiffs' closings. (Jeffers was not even added as a plaintiff until the First Amended Complaint was filed on June 2, 2011.)

Thus, defendants argue the original complaint and the amended complaint were filed more than four years after plaintiffs' causes of action for fraud accrued. Defendants contend plaintiffs' fraud claims accrued on the dates of plaintiffs' closings because the documents plaintiffs received at their closings (the comparison statements and HUD-1 Settlement Statements) would have put a reasonable person on notice of plaintiffs' asserted fraudulent concealment claims.

---

(*See* Def. Rep. at 4-5.)

Plaintiffs dispute that the closing documents were sufficient to alert them to defendants' alleged fraud, stating they could not have been expected to uncover defendants' fraudulent "omissions" from the closing documents. (SAC, ¶ 56.) In fact, plaintiffs allege they did not discover defendants' fraud "until they were alerted to it by counsel within a few months of the filing of the Complaint in this action." (SAC, ¶ 56.)

Plaintiffs' argument is not persuasive. The "discovery rule" applicable in Ohio generally provides that a cause of action accrues when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained-of injury. *Brown, et al., v. Lincoln National Life Ins., et al.*, Case No. 02AP-225, 2003 WL 21153280, at *11 (Ohio App. 2003). No more than a reasonable opportunity to discover the misrepresentation is required to start the running of the statute of limitations. *Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 454 (Ohio App. 1993).

> Moreover, constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. *Flowers v. Walker,* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284. A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. *Id*. Rather, the "cognizable event" itself puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue his or her remedies.

*Brown*, 2003 WL 21153280, at *11.

All information that existed as to plaintiffs' purchase of homeowner's insurance existed – and was in plaintiffs' possession – at the time of plaintiffs' real estate closings. Specifically, at the time of their closings, plaintiffs possessed their real estate purchase agreements and all of the disclosures defendants made to them in connection with title insurance, namely, the comparison statements and HUD-1 Settlement Statements. Even if

17

plaintiffs did not fully appreciate that defendants made fraudulent omissions in connection with their sale of title insurance when their transactions closed, the closing documents were at least sufficient to put plaintiffs "on notice to investigate the facts and circumstances" relative to any fraud claim in connection with defendants' sale of title insurance to them at closing. *See, e.,g.*, *Craggett*, 92 Ohio App.3d at 454 ("information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence").

Thus, the Court finds that plaintiffs' fraud claim accrued at the time of their real estate closings. Having failed to file this action within four years after their causes of action accrued, plaintiffs' fraud claims alleged in Count III are barred by the statute of limitations.

For all of the reasons discussed above, defendants are entitled to judgment on the pleadings on plaintiffs' fraudulent concealment claim alleged in Count Three.

*Unjust Enrichment*

Plaintiffs allege in Count Two of the Complaint that defendants have been unjustly enriched:

> through their unreasonable and unconscionable sales practice of upselling a HOMEOWNER'S Policy of Title Insurance to Plaintiffs at a premium that was effectively 30 percent higher than the premium charged for an OWNER'S Policy of Title Insurance, which the Plaintiffs and other putative class members intended to purchase, in accordance with the Real Estate Purchase Agreement Form, and through their practice of charging settlement fees as a neutral, impartial settlement agent, when in fact Defendants were advancing their own interests in closing the transactions and failed to close the transactions as contracted.

(SAC, ¶ 49.)[10]

---

[10]

Under Ohio law, a claim of unjust enrichment requires a plaintiff to show that:

Although the Complaint does not mention "fraud" or inadequate disclosure, plaintiffs assert in their opposition brief that the basis of their unjust enrichment claim is two-fold:  (1) that defendants received additional premiums and commissions for the sale of homeowner's insurance earned "unfairly –  that is fraudulently, without full disclosure"; and (2) that defendants received and retained "a fee for serving as settlement agent which fee was not earned, since . . . [defendants] failed to fulfill a duty owed to Plaintiffs to close the transaction presented to them, and not to propose changes to the contract for their own personal benefit." (Pltfs. Opp. at 15.)

Defendants contend they are entitled to judgment on the pleadings on plaintiffs' unjust enrichment claim because the unjust enrichment claim is based on the same allegations that underlie plaintiffs' failed fraud and breach of contract claims.  Defendants contend plaintiffs cannot maintain an unjust enrichment claim on the basis of fraud because "all of the material terms of the Homeowner's Policies were fully disclosed to Plaintiffs prior to their election of these Policies."  (Def. Mot. at 23.)  They contend plaintiffs cannot claim they were unjustly enriched by failing to adhere to the terms of contractual escrow instructions because Chicago Title did not breach but rather strictly adhered to all of its duties set out in the escrow instructions.  In addition, defendants assert that plaintiffs' unjust enrichment claim fails to the extent it is based on defendants' obligation to close the transactions presented to them because those obligations are governed by express contracts (plaintiffs' real estate purchase

---

(1) plaintiff conferred a benefit on defendant; (2) defendant knew of such benefit; and (3) defendant retained the benefit under circumstances where it would be unjust to do so without payment. *Resource Title Agency, Inc. v. Morreale Real Estate*, 314 F. Supp.2d at 772.

agreements), and a plaintiff may not recover under a theory of unjust enrichment or quasi-contract under Ohio law when an express contract governs the same subject. *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009).

Defendants' arguments have merit. As the Court has determined above, plaintiffs do not have plausible claims that defendants sold them homeowner's title insurance fraudulently or in breach of any contractual escrow instruction. Furthermore, defendants correctly state the law in Ohio that an unjust enrichment claim cannot be maintained when an express contract governs the same subject. *Wuliger*, 567 F.3d 787. Plaintiffs allege that valid, express contract (the real estate purchase agreements) establish Chicago Title's contractual escrow obligations.

In that the Court has determined that defendants did not sell plaintiffs homeowner's title insurance fraudulently or in breach of any contractual escrow instruction, plaintiffs' asserted bases for their unjust enrichment claim fail, and defendants are entitled to judgment on the pleadings on Count Two.

**Conclusion**

For all of the foregoing reasons, the pleadings establish that plaintiffs have not alleged any plausible claim in the Complaint against defendants. Defendants' Motion for Judgment on the Pleadings, accordingly, is granted.

IT IS SO ORDERED.

/s/Patricia A. Gaughan
PATRICIA A. GAUGHAN
Date:    11/30/11              United States District Judge